WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Tanya Henson, et al.,

    Plaintiffs,

v.

City of Scottsdale, et al.,

    Defendants.

No. CV-17-00339-PHX-GMS

**ORDER**

Pending before the Court are Defendants Judge Statia Hendrix and Officer Michael Glass's Amended Motion to Dismiss, (Doc. 15), Defendants Karen Close, Natalie La Porte, and Cyndi Negron's Motion to Dismiss, (Doc. 16), and Defendants Jim Thompson, Judge James Blake, and Seth Peterson's Motion to Dismiss, (Doc. 33). Also pending are Plaintiffs Tom Henson and Tanya Henson's Motion to Strike, (Doc. 17), Motion for Time to Add Exhibits to the Motion to Strike, (Doc. 18), and Motion for Entry of Default, (Doc. 40). For the following reasons, Defendants Judge Statia Hendrix and Officer Michael Glass's Motion to Dismiss is granted. (Doc. 15.) Defendants Karen Close, Natalie La Porte, and Cyndi Negron's Motion to Dismiss, (Doc. 16), and Defendants Jim Thompson, Judge James Blake, and Seth Peterson's Motion to Dismiss, (Doc. 33) are granted. The Hensons' Motion to Strike, (Doc. 17), and Motion for Entry of Default, (Doc. 40), are both denied, and the Motion for Additional Time is denied as moot. (Doc. 18.)

/ / /

## BACKGROUND

Thomas and Tanya Henson brought this suit under §§ 1983, 1985, 1986, and 1988 of Title 42 against various state actors and one private citizen, Mr. Salvatore Marsala, as well as a local company, All City Towing.[1] (Doc. 1.) Both Plaintiffs describe themselves as "sovereign individuals" "living in the geographical location known as Arizona." (*Id.* at 2.)

Pursuant to Mrs. Henson's account, she was driving her husband's car when Officer Glass turned on his lights and pulled her vehicle over. (*Id.* at 6.) Mrs. Henson proceeded to try to call her husband. (*Id.*) Officer Glass came to her window, took her phone away from her, and asked her to leave her vehicle. (*Id.* at 6−7.) Officer Glass proceeded to take pictures of the text messages on Mrs. Henson's phone that related to the charges for which she was subsequently arrested. (*Id.* at 7.) He then informed her that she was under arrest "for not obeying him." (*Id.*)

Mrs. Henson was removed to Officer Glass's police car, where she informed him that she needed to obtain her medicine. (*Id.* at 8.) At that time her vehicle was being towed, and she was unable to recover her medication prior to going to jail. (*Id.*) Mr. Henson eventually brought Mrs. Henson's medication to the jail later that evening, and

---

[1] Section 1983 is "generally not applicable to private parties" without a showing of joint action between the government and the private party. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Nothing in the Plaintiffs' Complaint indicates that Defendant Salvatore Marsala "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Rather, the Plaintiffs allege that Defendant Marsala "filed false information to the City of Scottsdale and indirectly caused both Plaintiffs damage." (Doc. 1 at 17.) There is no indication that "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity," and thus there is no indication that joint action played a role in this case. *Kirtley*, 326 F.3d at 1093 (internal quotation and citation omitted). Therefore, in the absence of any allegations to plausibly suggest such joint activity, it does not appear to the Court that the Complaint states a claim against Defendant Marsala. The Court thus denies the Plaintiffs' Motion for Entry of Default Judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (explaining that a district court may deny default judgment where there are doubts regarding the merits of the Plaintiff's substantive claim).

Mrs. Henson was released shortly thereafter. (*Id.* at 8–9.)

Upon release from jail, Mr. and Mrs. Henson were required to pay sixty-five dollars to have their vehicle released. (*Id.* at 10.) According to Mrs. Henson, Officer Glass obstructed her ability to obtain her phone from the police, eventually leading her husband to file an insurance claim to replace the phone before it was returned a week after it was taken. (*Id.* at 10–11.)

Mrs. Henson appeared before Judge James Blake for her initial appearance. (*Id.* at 11.) At that time, she requested that Judge Blake establish that the Arizona Constitution and laws applied to her before proceeding. (*Id.* at 11.) Judge Blake entered a plea of not guilty on her behalf. (*Id.*) At a subsequent hearing, Judge Statia Hendrix presided. (*Id.*) Again, Mrs. Henson asserts that the Judge never explained whether jurisdiction was present. (*Id.*) Furthermore, at this hearing, Judge Hendrix refused to allow Mr. Henson, a non-attorney, to speak. (*Id.*) Judge pro tem Jennifer Dalton presided over Mrs. Henson's next hearing, where Mrs. Henson again attempted to argue that the charges against her could not stand due to the Court's lack of jurisdiction over her. (*Id.* at 12−13.) Judge Hendrix presided over Mrs. Henson's final hearing, where Mrs. Henson again unsuccessfully raised the issue of jurisdiction. (*Id.* at 13.) Mrs. Henson also alleges that Judge Hendrix failed to accommodate Mrs. Henson's schedule when she set the trial date. (*Id.*)

Public records reflect that Mrs. Henson was arrested on charges of disorderly conduct, harassment by communication, harassment by following in public, and failure to obey a police officer.[2] (Doc. 15-1 at 2.) Mrs. Henson failed to appear at her bench trial, and she was found guilty of both of the harassment charges and the failure to obey a police officer charge. (*Id.* at 38.)

---

[2] "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation omitted). The court documents presented by the Defendants in their exhibit are public records, and are therefore properly considered.

Mr. and Mrs. Henson filed a total of thirteen charges against the Defendants, alleging causes of action that center on violations of the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments through §§ 1983, 1985, 1986, and 1988 of Title 42. (Doc. 1 at 15−18.) They seek $2,000,000 in compensatory damages and $500,000 in punitive damages, as well as attorney's fees. (*Id.* at 18.) In response, the majority of the Defendants filed motions to dismiss. (Docs. 15, 16, 33.)

## DISCUSSION

### I.  Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."[3] *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However,

---

[3] Because the Hensons are pro se parties, the Court construes their Complaint liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings;

- 4 -

1 legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**II.   Analysis**

   **A.   Mr. Henson Fails to State a Claim Against the Defendants**

Mr. Henson alleges that he incurred costs from Officer Glass's impounding of his vehicle and seizure of his cell phone following his wife's arrest. (Doc. 1 at 16.) To establish a cause of action under § 1983, however, the Plaintiff must establish that Officer Glass's conduct deprived him of his rights under federal law. The Hensons' Complaint does not sufficiently allege that Officer Glass's impoundment of Mr. Henson's vehicle, or the seizure of Mr. Henson's cell phone, deprived him of his rights under federal law.[4]

Arizona law authorizes a police officer to contact a company to tow a vehicle following the arrest of the driver. *See* A.R.S. § 28-872. Section 28-872(H) further provides that the owner of the vehicle that was properly removed by a tow truck company is responsible for paying the costs incurred by towing and impounding the vehicle. *Id*. The allegations of the complaint do not plausibly allege either that the law did not authorize Officer Glass to have the car towed, or that such authorization violates his rights under federal law. Therefore, Mr. Henson did not state a claim for which relief can be granted based on the towing of his vehicle.

Likewise, Mr. Henson fails to sufficiently state a claim for unreasonable seizure of his cell phone. The Hensons allege that Mrs. Henson gave Officer Glass permission to "look at her phone for text messages." (Doc. 1 at 7.) Thereafter, the cell phone was

---

accordingly, we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*.").

[4] Additionally, to the extent that Mr. Henson alleges that he suffered injuries due to the Defendants' treatment of his wife, he fails to assert standing because he fails to allege that he personally suffered an injury in fact due to the Defendants' treatment of Mrs. Henson. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) ("A person has standing to sue for a violation of this particular right of the people only if there has been a violation as to him, personally." (internal quotations omitted)).

- 5 -

seized, and Mrs. Henson was arrested for harassment by communication and taken to the police station. Federal law permits the seizure of property if it constitutes evidence of a crime—"if evidence of crime is discovered, it may be seized and admitted in evidence." *United States v. Edwards*, 415 U.S. 800, 803 (1974). A search of a cell phone's data without consent is impermissible until a warrant has been obtained, but Mr. Henson's claim arises out of being deprived of the phone due to its seizure, not due to any improper search. *See generally Riley v. California*, 134 S. Ct. 2473, 2493 (2014) (finding that searching an arrestee's cell phone data without consent or a warrant is impermissible under the Fourth Amendment). Therefore, because there is no plausible allegation in the complaint that the cell phone was improperly seized, Claim Five of the Complaint is dismissed without prejudice.

**B. Mrs. Henson's *Monell* Claims Fail to Meet the Plausibility Standard**

Mrs. Henson asserts claims against the City of Scottsdale for failing to train its officers. To maintain such a claim, Mrs. Henson needed to allege facts that illustrate that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" caused her injuries. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In other words, a city may not be held liable for the acts of a single employee unless his actions represented the official policy of the city. *Id.* at 658 ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Mrs. Henson did not allege any facts that indicate that her alleged injuries were caused by the City of Scottsdale's policies, beyond her conclusory statement that "upon information and belief" the City of Scottsdale has such policies. (Doc. 1 at 15−16.) This is insufficient, and therefore, the claims against the City of Scottsdale are dismissed with leave to amend.[5]

---

[5] Mrs. Henson's only claims against Defendant Jim Thompson are in connection with his role as the City of Scottsdale's City Manager. Therefore, the claims against Mr. Thompson are dismissed as well.

### C. Judicial Immunity Bars Mrs. Henson's Claims Against Judges Blake and Hendrix

Judicial officers, including municipal judges, are entitled to absolute immunity while performing judicial acts unless the judge has "acted in the clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal quotation and citation omitted). The Hensons allege that the Defendant Judges in this case are not entitled to immunity because they did not have jurisdiction over the Hensons. As is evinced by the Complaint itself as well as the underlying convictions, this is not the case. The Hensons do not contest that they reside in Arizona. The Complaint, and the arrest records, indicates that Mrs. Henson was in Scottsdale at the time of her arrest. (Doc. 1 at 6, Doc. 15-1 at 4.) Under Arizona law, municipalities such as the City of Scottsdale are authorized to exercise jurisdiction over individuals that commit crimes within their city limits. *See* A.R.S. § 22-402 (granting municipal courts "jurisdiction of all cases arising under the ordinances of the city or town" as well as concurrent jurisdiction "of violations of laws of the state committed within the limits of the city or town."). Furthermore, finding that the municipal court lacked jurisdiction over Mrs. Henson's case would "necessarily imply the invalidity of [her] conviction or sentence," and thus would run afoul of *Heck v. Humphrey*, 512 U.S. 477 (1994), which is discussed in more detail below. *Id.* at 487. Therefore, Judges Hendrix and Blake had jurisdiction over Mrs. Henson, and were entitled to absolute immunity as long as their actions were judicial in nature.

There are four factors for determining if an action is judicial, including whether

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

*Meek v. Cty. of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999) (internal quotation omitted). The Hensons do not contest that these factors are satisfied, but rather continue to assert that the Judges committed unlawful acts while engaging in actions that were judicial in

nature. (*See* Doc. 27.) Even assuming all of the Hensons' allegations are true, they remain barred by judicial immunity, and no amendment to them will alter this result. Therefore, the claims against Judges Hendrix and Blake are dismissed with prejudice. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

### D. The Majority of Mrs. Henson's Remaining Claims are Barred by *Heck v. Humphrey*.

"[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal," or otherwise show that the conviction was invalid. *Heck v. Humphrey*, 512 U.S. at 486–87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487 (emphasis original). Therefore, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* For this reason, "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. However, *Heck* does not apply where "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* Therefore, in certain excessive force cases, where the use of excessive force does not imply that the conviction was invalid, *Heck* will not bar the plaintiff from pursuing her suit. *See generally Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) ("[E]xcessive force used *after* a defendant has been arrested may properly be the subject of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully conducted." (emphasis original)).

### 1. Seth Peterson, Karen Close, Natalie La Porte, and Cyndi Negron

Mr. and Mrs. Henson allege that prosecutors Seth Peterson, Karen Close, and Natalie La Porte as well as paralegal Cyndi Negron are liable for their damages because they "had no evidence or facts that the laws, statutes, or the Constitution applied to Mrs. Henson to prosecute any alleged complaint" against her. (Doc. 1 at 17.) This is essentially a malicious prosecution claim. *See Heck*, 512 U.S. at 484. As Mrs. Henson has not presented any evidence to demonstrate that the prior criminal conviction was found to be invalid, these claims cannot stand. *Id.* Therefore, Mr. and Mrs. Henson's claims against Seth Peterson, Karen Close, Natalie La Porte, and Cyndi Negron are dismissed without prejudice.

### 2. Officer Glass

Mr. and Mrs. Henson's claim against Officer Glass stem from their allegations of unlawful arrest (Claims Three and Eleven), cruel and unusual punishment (Claim Four) and wrongful search and seizure (Claim Five). To prevail on her claim of unlawful arrest, Mrs. Henson "would have to demonstrate that there was no probable cause to arrest [her]." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Mrs. Henson was convicted based on her failure to obey Glass's requests and the text messages contained in her cell phone, which she admits that she voluntarily turned over to the police at the time of her stop. (Doc. 1 at 7.) A finding that this arrest was "unlawful" due to the absence of probable cause would necessarily imply that her subsequent conviction was invalid. Thus, her unlawful arrest claim is barred under *Heck*. *See Cabrera*, 159 F.3d at 380 (dismissing a false imprisonment claim because "finding there was no probable cause would 'necessarily imply' that Cabrera's conviction for disturbing the peace was invalid.").

Mrs. Henson's claims against Glass for wrongful search and seizure also fail. As an initial matter, Mrs. Henson's own complaint alleges that she voluntarily gave her phone to Glass and gave him permission to look at her text messages, thus consenting to the search. (Doc. 1 at 7.) Therefore, the search of the phone cannot form the foundation

of an unreasonable search and seizure. Officer Glass impounded the vehicle following Mrs. Henson's arrest. As above, a finding that he did not have probable cause to do so necessarily implies that her subsequent conviction was invalid. *See Cabrera*, 159 F.3d at 380. Therefore, both Mrs. Henson's claims for wrongful search and seizure as well as her claims for unlawful arrest are dismissed, and because "any amendment would be an exercise in futility," they are dismissed without prejudice. *See Steckman*, 143 F.3d at 1298.

However, Mrs. Henson's excessive force claim is not barred by *Heck*. *See Cabrera*, 159 F.3d at 380–81 ("On the other hand, Cabrera's claims for the use of excessive force and official cover-up of the alleged Fourth Amendment violations, if successful, would not necessarily imply the invalidity of his conviction."). Mrs. Henson alleges that Officer Glass grabbed her wrist, dragged her out of her vehicle, and refused to give her medication that she required. (Doc. 1 at 7−8.) The Court assumes, because it is unclear, that these are the facts Mrs. Henson is relying upon as forming the foundation of her cruel and unusual punishment claim in Claim Four, which the Court construes as a due process and excessive force claim.[6]

The Defendants rely upon *Smith v. City of Hemet*, for the proposition that an excessive force claim cannot survive under *Heck* if the plaintiff was convicted of failing to obey. 394 F.3d at 695. This is incorrect. In *Smith*, the plaintiff was convicted for resisting arrest in California, and "[i]n California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Id.* Furthermore, in California, an officer's actions were not lawful if he was acting with excessive force. *Id.* Therefore, a finding that an officer acted with excessive force following a plaintiff's conviction for resisting arrest would necessarily implicate the

---

[6] The "whole point of the [Eighth] [A]mendment is to protect persons convicted of crimes." *Spain v. Procunier*, 600 F.2d 189, 194 (9th Cir. 1979). The Due Process Clause generally governs pretrial detention. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

- 10 -

plaintiff's conviction pursuant to *Heck*. *Id.*

Mrs. Henson was convicted for refusing to obey an officer under Scottsdale's city ordinance. The City of Scottsdale's ordinance reads that "No person shall refuse to obey a peace officer engaged in the discharge of his duty, or any other person authorized to aid in quelling any riot, rout, or affray." S.R.C. § 19-13. There is no indication that the lawfulness of the officer or the reasonableness of his force is an essential element of the City of Scottsdale's ordinance, as it was in *Smith*.[7] Therefore, the same logic does not apply in this case, and a subsequent finding that an officer acted with excessive force during the arrest would not necessarily implicate the validity of her conviction for failure to obey. *See Cabrera*, 159 F.3d at 380–81; *Smithart v. Towery*, 79 F.3d 951, 953 (9th Cir. 1996) ("To the extent that Smithart seeks to recover for defendants' alleged use of excessive force during the course of his arrest, his section 1983 action may proceed despite the fact that his conviction has not been reversed, expunged, invalidated, or called into question by the issuance of a writ of habeas corpus by a federal court.").

### E. Mrs. Henson's Excessive Force Claims and Due Process Claims are Dismissed for Failure to State a Claim.

Mrs. Henson alleges that Officer Glass utilized excessive force against her by grabbing her wrist, dragging her out of the vehicle, and denying her accessibility to her medication. However, the pro se parties in this case erroneously categorized this claim as an Eighth Amendment claim. Given that the parties are pro se, and that they do make other Fourth Amendment claims in the Complaint, the Court liberally construes this claim as a Fourth Amendment Claim. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Graham v. Connor*, 490 U.S. 386, 394–96 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."). Additionally, Mrs. Henson alleges that Officer Glass continued to

---

[7] Furthermore, pursuant to the police report, Mrs. Henson was arrested for failing to obey Officer Glass's order to stay away from Salvatore Marsala's home. (Doc. 15-1 at 4.) Therefore, whether Officer Glass did or did not grab her wrist, drag her out of the vehicle, or deprive her of her medication would not have any bearing on her conviction for failing to obey his earlier stay away order.

- 11 -

deprive her of medication from the time she was arrested until her husband came to the jail that evening. The Court construes this as a due process claim, as it involves pretrial detention. *See Bell*, 441 U.S. at 535–36.

To allege an excessive force claim, a plaintiff must allege facts sufficient to establish that "the officers used excessive force, *i.e.*, force that was not 'objectively reasonable' in light of the facts and circumstances confronting the officer." *Robinson v. Solano Cty.*, 278 F.3d 1007, 1013 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 397). Therefore, "gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment." *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001). However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Furthermore, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Mrs. Henson's allegations acknowledge that she did not immediately get out of the vehicle when asked, instead asking "why she had to get out of the car." (Doc. 1 at 7.) Pursuant to her allegations, Officer Glass told her that she had to get out of the car because "he said so" prior to opening her vehicle's door, grabbing her wrist, and removing her from the car. (*Id.*) These facts are insufficient to allege that Officer Glass exerted an unreasonable force on Mrs. Henson, as "[e]ven passive resistance may support the use of some degree of governmental force if necessary to attain compliance" with an officer's order. *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). The Complaint fails to allege any facts that indicate Officer Glass's actions resulted in anything more than a *de minimis* use of force on Mrs. Henson's wrist; she does not allege that she needed medical treatment, that there was bruising, or that there was any subsequent trauma as a result of Officer Glass's actions. Without more, a *de minimis* use of force such as the use alleged under the circumstances does not state a plausible claim for relief under the Fourth Amendment. *Nakamura v. City of Hermosa*

*Beach*, No. CV06-06776 GW(SS), 2009 WL 1445400, at \*11 (C.D. Cal. May 20, 2009) ("Here, the amount of force was *de minimis,* particularly in view of the government's substantial interest in preventing Plaintiff from fleeing until Defendant Jones resolved the stalking allegation. Accordingly, Plaintiff's excessive force claim fails."), *aff'd*, 372 F. App'x 787 (9th Cir. 2010). Therefore, Mrs. Henson's excessive force claim is dismissed.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. A pretrial detainee may allege a cause of action under the Due Process Clause if the "jail conditions or restrictions . . . 'amount to punishment.'" *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (quoting *Bell*, 441 U.S. 535–37). Furthermore, a pretrial detainee must allege that the "prison officials acted with deliberate indifference." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017). The case law on what constitutes deliberate indifference under the Fourteenth Amendment is less than clear. *Id.* at 1068.

In *Castro*, the Ninth Circuit clarified that there are two inquiries, and thus two states of mind, at issue when analyzing whether deliberate indifference is present in a failure to protect due process claim. *Id.* The first asks whether the "officer's conduct with respect to the plaintiff was intentional." *Id.* at 1070. As an example, the *Castro* Court envisioned a scenario where "the claim relates to inadequate monitoring of the cell" that results in injury to a pretrial detainee. *Id.* In such an instance, the relevant "inquiry would be whether the officer chose the monitoring practices rather than, for example, having just suffered an accident or sudden illness that rendered him unconscious and thus unable to monitor the cell." *Id.* The second state of mind inquiry is "purely objective," and asks whether the officer failed to "take reasonable available measures to abate [substantial] risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious."[8] *Id.* at 1071. This inquiry requires a

---

[8] This inquiry notably "differs from the inquiry with respect to an Eighth

- 13 -

claimant to allege "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

Mrs. Henson alleges that she told Officer Glass that she needed her medication prior to be taken to jail, but he refused to retrieve it from her vehicle and "just laughed" when she told him she needed it. (Doc. 1 at 8.) This is sufficient to allege that Officer Glass's actions in denying her medication were intentional; that is, he intentionally declined to retrieve her medication from the vehicle. However, from the face of the allegations, it is not apparent that a reasonable officer would have "appreciated the high degree of risk involved" in doing so. *Castro*, 833 F.3d at 1071. Mrs. Henson alleges that she told Officer Glass only that she "needed" her medication, and did not mention what could happen should she miss a dose. Nothing in the Complaint indicated that Officer Glass knew what the medication was, such as if it was an over the counter pain medication or some other drug Mrs. Henson could obtain at the jail. The Complaint does not allege enough to indicate that Officer Glass acted with "something akin to reckless disregard" by failing to retrieve the medication. *Castro*, 833 F.3d at 1071. Therefore, Mrs. Henson's claim against Officer Glass for failing to retrieve the medication is dismissed.

To the extent that Mrs. Henson alleges a claim against the officers at the jail during her detention, this claim is dismissed because the Complaint does not allege that these officers acted with deliberate indifference. Mrs. Henson alleges that she missed her nightly dose of medication, and that this led her to "becoming jittery" while at the jail. (*Id.* 8–9.) The police at the jail then called the paramedics, who offered to take Mrs. Henson to the hospital. (*Id.*) She refused. (*Id.*) The police at the jail then called her husband. (*Id.*) Mr. Henson was instructed to bring medication to Mrs. Henson, and she

---

Amendment failure-to-protect claim," where the deliberate indifference standard requires that 1) the deprivation alleged by the claimant must be objectively sufficiently serious and 2) the officer in question must have had a subjectively sufficient intent. *Castro*, 833 F.3d at 1070–71.

was subsequently released. (*Id.*) From these facts, there is no indication that the officers acted with deliberate indifference toward Mrs. Henson, under any applicable standard. To the contrary, the Complaint indicates that the officers at the jail attempted to assist Mrs. Henson throughout the incident. Accordingly, Mrs. Henson's excessive force and due process claims are dismissed with leave to amend. *See Steckman*, 143 F.3d at 1298.

### F. The Hensons' Motion to Strike is Denied

The Hensons filed a Motion to Strike Defendants' Officer Glass and Judge Hendrix's Amended Motion to Dismiss, (Doc. 17). However, the Local Rules only permit a motion to strike to be filed "if authorized by statute or rule, such as Federal Rules of Civil Procedure 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule or court order." L.R. Civ. 7.2(m). The Hensons' Motion to Strike appears to be based on the merits of the Defendants' substantive arguments rather than any of the authorized justifications for a motion to strike, as outlined in the Local Rules.[9] (*See* Doc. 17.) Therefore, the Motion to Strike is denied, (Doc. 17), and the Motion for Time to Add Exhibits to the Motion to Strike, (Doc. 18), is also denied as moot.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants Karen Close, Natalie La Porte, and Cyndi Negron's Motion to Dismiss, (Doc. 16), and Defendants Jim Thompson, Judge James Blake, and Seth Peterson's Motion to Dismiss, (Doc. 33). Defendants Judge Statia Hendrix and Officer Michael Glass's Amended Motion to Dismiss, (Doc. 15), is granted.. The Hensons' Motion to Strike is denied, (Doc. 17), and the Motion for Additional Time is denied as moot. (Doc. 18.) Finally, the Motion for Entry of Default, (Doc. 40), is denied.

**IT IS THEREFORE ORDERED** that Defendants Karen Close, Natalie La Porte, and Cyndi Negron's Motion to Dismiss, (Doc. 16), is **GRANTED.**

/ / /

---

[9] The Hensons did file a Response to the Defendants' motions, and the Motion to Strike echoes the arguments made therein. (Doc. 27.)

- 15 -

**IT IS FURTHER ORDERED** that Defendants Jim Thompson, Judge James Blake, and Seth Peterson's Motion to Dismiss, (Doc. 33), is **GRANTED.** The claims against Defendant Judge James Blake are dismissed with prejudice, and the claims against Defendant Jim Thompson and the City of Scottsdale are dismissed with leave to amend. The claims against Defendant Seth Peterson are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Defendants Judge Statia Hendrix and Officer Michael Glass's Amended Motion to Dismiss, (Doc. 15), is **GRANTED.** The claims against Judge Hendrix are dismissed with prejudice. Mrs. Henson's due process and excessive force claims against Officer Glass and the other unnamed police officers are dismissed with leave to amend. The remainder of Mrs. Henson's claims against Officer Glass, including her claims for unlawful arrest and unreasonable search and seizure, are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Hensons' Motion to Strike, (Doc. 17), is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion for Additional Time, (Doc. 18), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Motion for Entry of Default, (Doc. 40), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Tanya Henson shall have **30 days** from the date of this Order to file an amended complaint with respect to her failure to train, excessive force and due process claims against the City of Scottsdale, Officer Glass, and the unnamed police officers.

**IT IS FURTHER ORDRED** that if an amended complaint is not timely filed on these claims by **September 5, 2017**, the Clerk of Court is directed to terminate this action without further notice.

///
///
///

**IT IS FURTHER ORDERED** that should Plaintiff Tanya Henson choose to file an amended complaint, the Court requires that it comply with Local Rule of Civil Procedure 7.1.

Dated this 2nd day of August, 2017.

_____
Honorable G. Murray Snow
United States District Judge